UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RED ROOF FRANCHISING, LLC,

  Plaintiff,                     :       Case No. 2:18-cv-16

  -vs-                               Judge Sarah D. Morrison
                                      Magistrate Judge Chelsey M. Vascura

RIVERSIDE MACON GROUP, LLC,
*et al.*,
                                :

  Defendants.

## OPINION AND ORDER

This matter is before the Court upon Plaintiff Red Roof Franchising, LLC's Motion for Summary Judgment (ECF No. 32), Defendants Riverside Macon Group, LLC, and Deba Shyam's Memorandum in Opposition (ECF No. 33), and Plaintiff's Reply (ECF No. 36). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion.

**I.    BACKGROUND**

Plaintiff Red Roof Franchising, LLC ("Plaintiff") is a hotel chain that grants licenses to franchisees for the establishment and operation of Red Roof Inns across the globe. (Franchise Agreement, p. 1, ECF No. 1-2). A franchisee license includes the use of the "Red Roof System," which is comprised of the Red Roof Inn logo, other trademarks, trade symbols, signs, and slogans, and a computer reservation system. (*Id.*). Plaintiff's headquarters are located in Columbus, Ohio.

    **A.**    **The Terms of the Franchise Agreement**

On August 25, 2011, Plaintiff entered into a Franchise Agreement with FMW RRI NC, LLC ("FMW") for a franchised Red Roof Inn located at 3950 River Place Drive, Macon,

1

Georgia (hereafter the "Subject Property"). (Transfer Agreement, ECF No. 17-1). Thereafter, FMW sold the Subject Property and assigned all right, title, and interest in it to Defendant Riverside Macon Group, LLC ("Riverside"). (*Id.*). Riverside did not have conversations with anyone concerning damage to the property prior to the purchase. (Kluchin Depo., 23, ECF No. 32-2).

On February 18, 2014, Plaintiff entered into a Franchise Agreement with Riverside for operation of the Subject Property. (ECF No. 1-2). Pursuant to the Franchise Agreement, Riverside was obligated to "operate the Inn as a Red Roof Inn . . . and to use the System and the Proprietary Marks in compliance with the Standards and the terms of this Franchise Agreement in connection with the ownership and operation of the Inn." (*Id.* § 1.1). The term of the Franchise Agreement was 20 years. (*Id.* at Ex. A). Riverside agreed to make regular payments to Plaintiff for royalties, marketing and reservations, a Preferred Members Program, and various other fees. (*Id.* §§ 4.1–4.5). Riverside's failure, refusal, or neglect to pay any monies owed to Plaintiff when due constituted a default under the Franchise Agreement. (*Id.* § 13.2.12). Plaintiff could terminate the Franchise Agreement if Riverside failed to cure the default within five days after written notice was given. (*Id.* § 13.3).

According to the Renovation Addendum to the Franchise Agreement, Riverside was required to make certain improvements to the Subject Property by specific deadlines. Riverside's failure to meet the deadlines set forth in the Renovation Addendum also resulted in default. (*Id.* § 13.2.11). Plaintiff could terminate the Franchise Agreement if Riverside failed to cure the default within 30 days after written notice was given. (*Id.* § 13.3). The Renovation Addendum provided for a possible extension of time to make improvements to the Subject Property with Plaintiff's authorization upon Riverside's written notification of the occurrence of a "Force Majeure."

(Reno. Addendum, §§ 4, 4.1, ECF No. 1-2). The Franchise Agreement also stated:

> In the event Franchisee commits any default of this Franchise Agreement, and if Franchisee fails to cure any such default which may be cured as permitted hereunder, Franchisor may, in its sole discretion, in lieu of, or as a preliminary action before, terminating this Franchise Agreement as provided in Sections 13.2 or 13.3, cease accepting reservations from guests for lodging at Franchisee's Inn through the Reservation System . . . until the default is cured. . . . If the Franchisee cures such default and requests reinstatement to the Reservation System and Franchisor agrees to do so, Franchisor may, at its discretion, charge Franchisee the then-current Reinstatement Fee[.]

(§ 13.4).

Upon termination of the Franchise Agreement, Riverside was required to "[p]ay upon demand . . . all damages, costs and expenses, including reasonable attorneys' fees, incurred by [Plaintiff] in connection with [Riverside's] default and/or early termination." (*Id.* § 14.1.7). If the termination was prior to the 20-year expiration date, Riverside agreed to pay liquidated damages in the amount of $100,000.00 "no later than five (5) days following [] the termination of this Franchise Agreement." (*Id.* § 13.1). Riverside was also required to "[i]mmediately cease to operate the Inn under the System" and cease "represent[ing] to the public or hold[ing] itself out as a present or former Red Roof Inn franchisee." (*Id.* § 14.1.1). This included removing the Red Roof Inn signs and any other articles that displayed any of Plaintiff's proprietary marks within one day following termination, or if not feasible, within ten days; but the signs were to be covered in the interim. (*Id.* § 14.1.2).

In connection with the Franchise Agreement, Defendant Deba Shyam signed a Guarantee to "the due, complete and punctual performance and observation of all of [Riverside's] financial obligations under the Franchise Agreement including, without limitation, the due and timely performance of all payment obligations." (*Id.* at Ex. C).

3

### B. Discovery of Mold

According to Michael Kluchin**,** (who works for a company that has common ownership of Riverside with Mr. Shyam and provides management services for Riverside), "on or about December 2, 2016," contractors discovered "extensive mold . . . was growing in inconspicuous areas, including in the walls and other areas that were inaccessible" on the Subject Property. (Kluchin Depo., 47–48; Kluchin Aff., ¶¶ 1, 2, 8, ECF No. 33-2). Riverside learned from a former FMW employee that both a fire and a flood occurred "a while back" on the Subject Property and the latter "involved all of the fire sprinkler lines and every room as well as the first floor completely flooded." (Kluchin Aff., ¶ 10; Defs. Ex. A, ECF No. 33-1).When asked if anyone from Red Roof had knowledge that mold was present prior to the sale of the Subject Property to Riverside, Mr. Kluchin responded, "No. Nobody's told me that[.]" (Kluchin Depo., 65). Several years prior, in July 2011, IVI Assessment Services, Inc. ("IVI") performed an environmental site assessment on the property and noted that "[b]ased upon our representative observations of approximately 10% of guestrooms and readily accessible areas of the Subject, IVI observed mold-like growth in one unit that was less than 4 square feet." (Defs. Ex. D, ECF No. 33-1).

According to Mr. Kluchin, "Riverside gave Red Roof written notice of the [m]old upon discovery but not later than March 2, 2017." (Kluchin Aff., ¶ 9).

### C. Termination of the Franchise Agreement

On November 10, 2016, Plaintiff sent Mr. Shyam a letter notifying him that Riverside was in default of the Franchise Agreement. (ECF No. 32-1). The letter provided that as of November 7, 2016, Riverside was past due in the amount of $3,080.90 in royalties, marketing, reservation, and Preferred Members Program fees through October 31, 2016. (*Id.*). It also indicated that Riverside failed to timely make certain improvements to the property as set forth

4

in the Renovation Addendum. (*Id*.). The "items to be completed" included renovations to the interior of the lobby and guestrooms, and exterior improvements. (*Id*.). The letter also indicated that "[a]s a result of these defaults, reservation services will be suspended upon receipt of evidence that this letter has been received by you and will remain suspended until the deficiencies have been cured to our satisfaction." (*Id.*). There is no dispute that Riverside's access to the online reservation system was cut off on November 10, 2016. (Kluchin Aff., ¶ 6).

On May 16, 2017, Plaintiff sent Mr. Shyam a second letter notifying him that Riverside was in default of the Franchise Agreement. (ECF No. 1-3). The letter provided that Riverside was past due in the amount of $14,734.34 for royalties, marketing, reservation, and Preferred Members Program fees from November 12, 2016 through April 30, 2017. (*Id.*). It also indicated that Riverside still failed to timely make certain improvements to the property as set forth in the Renovation Addendum. (*Id*.). According to Mr. Kluchin, Riverside could not perform the property improvements required by the Renovation Agreement because the property had to first be remediated for the mold issue, which began around December 2, 2016 and extended beyond August 31, 2017. (Kluchin Aff., ¶¶ 11, 12).

On August 31, 2017, Plaintiff sent Mr. Shyam a third letter notifying him of Plaintiff's termination of the Franchise Agreement. (ECF No. 1-4). The letter included that Riverside owed Plaintiff an accounts receivable balance of $20,690.40 for November 12, 2016 through August 31, 2017, liquidated damages in the amount of $100,000.00, and any amount that became due and owing after the termination date. (*Id.*). It also outlined the terms of the Franchise Agreement regarding Riverside's obligation to cease using any part of the Red Roof System. (*Id*.).

Thereafter, Riverside continued to use Plaintiff's proprietary marks and other distinctive Red Roof System features, including the Red Roof Inn logo and signs. (ECF No. 1-5; Kluchin

5

Depo., 115). On December 18, 2017, Plaintiff sent Riverside a cease and desist letter. (ECF No. 1-5). According to Mr. Kluchin, Riverside continued to operate the inn as a Red Roof "believing that [] - - [the Franchise Agreement] was not terminated correctly." (Kluchin Depo., 64). Riverside ultimately took down the Red Roof Inn signs in January 2018 "after receiving legal notice." (*Id.* at 115).

### D. Procedural History

On January 5, 2018, Plaintiff filed a "Verified Complaint"[1] alleging one count of federal trademark infringement, two counts of breach of contract, one count of unjust enrichment, one count of request for accounting, one count of action on guarantee, and one count of request to enter premises. (ECF No. 1). On the same day, Plaintiff moved for a temporary restraining order ("TRO") and a preliminary injunction. (ECF No. 2). The Court granted Plaintiff's request for a TRO and enjoined Defendants from using the Red Roof name, word designation, or mark in any way or otherwise infringing the Red Roof proprietary marks as defined in the Franchise Agreement. (ECF No. 5). The Court also ordered, among other things, Plaintiff be permitted to enter the Riverside property to remove the offending signage. (*Id.*). On January 25, 2018, the Court granted Plaintiff's request for a preliminary injunction. (ECF No. 7).

On March 23, 2018, Defendants filed an Answer and Counterclaims alleging three counts of breach of contract, two counts of fraudulent misrepresentation, two counts of fraudulent

---

[1] Generally, verified complaints "carry[y] the same weight as would an affidavit for the purposes of summary judgment." *ACLU v. Grayson Cty. Kentucky,* 591 F.3d 837, 844 n.2 (6th Cir. 2010) (internal quotations omitted). However, in order to be verified, the complaint must be signed "under penalty of perjury." 28 U.S.C. § 1746. That was not done here. (*See* p. 18, ECF No. 1). As such, the Court does not accept the Verified Complaint as the equivalent of an affidavit in support of Plaintiff's Motion for Summary Judgment. *See Banks v. Appleton Papers, Inc.,* No. 3:02cv571, 2005 WL 5602039, at *1 n.3 (S.D. Ohio Mar. 28, 2005) ("Although the Plaintiff's Complaint . . . is captioned as a 'Verified Complaint,' it is not such a pleading, since plaintiff neither signed it under the penalty of perjury, nor swore to it before a notary public.").

concealment, one count of tortious interference with business relationship, one count of civil conspiracy, and one count of violation of Ohio Rev. Code 1334.03. (ECF No. 17). Plaintiff filed its Answer to the Counterclaims on May 4. (ECF No. 19).

On September 3, 2019, Plaintiff moved for summary judgment on its federal trademark infringement, breach of contract, and action on guarantee claims and all of Defendants' counterclaims. Defendants responded on September 24 (ECF No. 33) and Plaintiff filed a reply on October 15 (ECF No. 36). Plaintiff's Motion is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of "identifying those parts of the record that demonstrate an absence of any genuine issue of material fact." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). The non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan*, 578 F.3d at 374.

When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### III. ANALYSIS

For the purpose of efficiency, the Court will address Defendants' counterclaims first.

#### A. Defendants' Counterclaims

##### 1. Breach of Contract

Defendants allege breach of contract actions in Counterclaims One through Three. The Court will take each one in turn.

In order to establish a prima facie breach of contract claim under Ohio, a plaintiff must show: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's failure to perform under the contract; and (4) damages resulting from defendant's failed performance. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006); *Maxey v. State Farm Fire and Cas. Co.*, 689 F. Supp. 2d 946, 950 (S.D. Ohio 2010); ("[A]breach of contract occurs when there is a binding contract or agreement, the non-breaching party performs its contractual obligations, the other party fails to fulfill its contractual obligations without legal excuse and the non-breaching party suffers damages as a result of the breach.").

In the first counterclaim, Defendants claim that Plaintiff breached the Franchise Agreement when it terminated Riverside's access to Plaintiff's reservation system on November 10, 2016 without giving Defendants an opportunity to cure the monetary or improvement defaults as set out in the Agreement. Plaintiff argues that it is entitled to summary judgment on this counterclaim because they were authorized to cut off access to their reservation system

immediately upon Defendants' default.

There is no dispute that on November 10, 2016, Plaintiff sent Mr. Shyam a letter notifying Defendants that they were in default of the Franchise Agreement and reservation services would be suspended immediately. (ECF No. 32-1). Section 13.4 of the Franchise Agreement states in pertinent part:

> In the event Franchisee commits any default of this Franchise Agreement, *and if Franchisee fails to cure any such default which may be cured or permitted hereunder,* Franchisor may, in its sole discretion, in lieu of, or as a preliminary action before, terminating this Franchise Agreement as provided in Sections 13.2 or 13.3, cease accepting reservations from guests for lodging at Franchisee's Inn through the Reservation System . . . until the default is cured. . . . If the Franchisee cures such default and requests reinstatement to the Reservation System and Franchisor agrees to do so, Franchisor may, at its discretion, charge Franchisee the then-current Reinstatement Fee[.]

(ECF No. 1-2) (emphasis added). While there is no doubt this section is poorly drafted, the Court reads the second clause of this section as requiring Plaintiff to give Defendants the allotted time in the Agreement to cure the defaults before cutting off access to Plaintiff's reservation system. Looking at the contract as a whole, the Franchise Agreement explicitly allows Defendants five days to cure any monetary default, and 30 days to cure any default as to property improvements. (*Id.* § 13.3); *SPG, Inc. v. First St. Dev., LLC*, 64 N.E.3d 340, 346 (Ohio Ct. App. 5th Dist. 2016) (explaining that the court will "examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract"). Thus, Plaintiff was not entitled to cut off access to its reservation system immediately upon Defendants' defaults. Plaintiff's Motion is **DENIED** as to Counterclaim One.

In the second counterclaim, Defendants claim that Plaintiff breached the Renovation Addendum when they terminated the Franchise Agreement short of a one-year suspension of the property improvements due to an event of Force Majeure. Plaintiff argues that there is no

9

evidence that Plaintiff agreed to provide Riverside additional time to perform the improvements due to the discovery of mold.

Sections 4 and 4.1 of the Renovation Addendum state:

> After Commencement of Renovation, Franchisee shall continue to renovate the Inn (except for delays which may be caused by the occurrence of events constituting "Force Majeure") until renovation is completed in strict accordance with the approved Renovation Plans, which may not be changed or modified after Franchisor's approval without Franchisor's prior written consent. . . . Franchisee shall notify Franchisor in writing of any event of Force Majeure upon its occurrence. In the event Franchisee requests, in writing, an extension of any of the deadlines contained herein and Franchisor approves such request, Franchisor may condition any extension upon compliance with then-current System Standards.

(ECF No. 1-2). Defendants claim they notified Plaintiff "not later than March 2, 2017" that there was an event of Force Majeure, i.e. extensive mold found on the Subject Property. (Kluchin Aff., ¶ 9). Defendants argue that this legally excused them from making improvements as required by the Renovation Addendum for one year from that date due to the mold remediation needed on the Subject Property.

Even if Riverside did notify Plaintiff in writing of the discovery of mold, and the discovery of mold constituted an event of Force Majeure, there is no evidence in the record to support that Plaintiff approved a request by Defendants for an extension of any deadlines set out in the Renovation Addendum, as required by Section 4.1. When asked if he had any documents to support that Plaintiff agreed to give Riverside additional time to perform the improvements as a result of Force Majeure, Mr. Kluchin responded, "I do not. No, I do not know." (Kluchin Depo., 110). Plaintiff's Motion is **GRANTED** as to Counterclaim Two.

In the third counterclaim, Defendants claim that Plaintiff breached a written modification to the Renovation Addendum—which allowed Riverside additional time to perform the improvements due to the discovery of mold—when it terminated the Franchise Agreement on

August 31, 2017. Similar to Counterclaim Two, Plaintiff argues that there is no evidence of any modification to the Renovation Addendum.

To support their argument, Defendants point to e-mail correspondence between Al Hernandez (who identifies himself as the "Franchise Operations Director" for Plaintiff in his signature block) and Mr. Shyam discussing Mr. Kluchin's role with Riverside and noting that there appears to be a "renovation in progress" at the Subject Property. (ECF No. 17-2). Nowhere in this e-mail communication is there an agreement to modify the Renovation Addendum. Plaintiff's Motion is **GRANTED** as to Counterclaim Three.

### 2. Fraudulent Misrepresentation and Concealment

Defendants allege fraudulent misrepresentation and concealment actions in Counterclaims Four through Seven. The Court will take each one in turn.

Under Ohio law, the elements for fraudulent misrepresentation/concealment include:

> "(1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance."

*Williams v. CitiMortgage, Inc.*, 498 Fed. Appx. 532, 534 (6th Cir. 2012) (quoting *CitiMortgage, Inc. v. Hoge*, 962 N.E.2d 327, 333 (Ohio Ct. App. 8th Dist. 2011)).

In the fourth and sixth counterclaims, Defendants claim that at the time of the Transfer Agreement and the Franchise Agreement, Plaintiff "intentionally misrepresented to Defendant Riverside that no flooding occurred on the Subject Property and that the Subject Property was not subject to mold damage." (Answer and Counterclaims, ¶¶ 87, 105). Plaintiff argues that there is no evidence that such misrepresentation was ever made to Defendants.

Defendants have not pointed to any evidence in the record that Plaintiff made any

11

representations to Defendants regarding past flooding or mold on the Subject Property. By contrast, Mr. Kluchin stated that that he did not believe there were any representations made by Plaintiff concerning the condition of the property. (Kluchin Depo., 21). Plaintiff's Motion is **GRANTED** as to Counterclaims Four and Six.

In the fifth and seventh counterclaims, Defendants contend that at the time Riverside entered into the Transfer Agreement and the Franchise Agreement, Plaintiff "intentionally concealed or failed to disclose to Defendant Riverside that flooding occurred on the Subject Property and that the Subject Property was subject to mold damage." (Answer and Counterclaims, ¶¶ 96, 114). Plaintiff argues that there is no evidence that Plaintiff had knowledge that the Subject Property had flooded or was subject to mold damage at the time of the Agreements.

Defendants have not pointed to any evidence in the record that Plaintiff had knowledge of mold or flood damage when the parties entered into the Transfer and Franchise Agreements. When Mr. Kluchin was asked if anyone from Red Roof had knowledge that mold was present on the Subject Property prior to the sale to Riverside, he responded "No. Nobody's told me that[.]" (Kluchin Depo., 65).

Moreover, that an environmental site assessment was conducted at the Subject Property in 2011 for a "Peter Chong" at "Five Mile Capital Partners, LLC" does not prove that Plaintiff had knowledge of the mold issue. (Defs. Ex. D, ECF No. 33-1). The 2011 assessment stated that in examining 10% of guestrooms and readily accessible areas of the Subject Property, "IVI observed mold-like growth in one unit that was less than 4 square feet." (*Id.*). This hardly amounts to something so obvious that Plaintiff, as the Franchisor of the hotel on the property, should have been on notice of it. As Plaintiff points out, Riverside operated a hotel at the Subject

12

Property for nearly three years before contractors discovered that "mold was growing in inconspicuous areas, including in the walls and other areas that were inaccessible." (Kluchin Aff., ¶ 8; Kluchin Depo., 47); *see Wolk v. Paino*, 2010 WL 1610748, at *6 (Ohio Ct. App. 8th Dist. 2010) (holding that the defendants were entitled to summary judgment on the plaintiff's fraudulent concealment claim where the evidence provided that the mold problems were discovered within the walls and the plaintiff otherwise failed to establish that the sellers had knowledge of it); *Dunn-Halpern v. MAC Home Inspectors, Inc.*, 2007 WL 1153446 at *3 (Ohio Ct. App. 8th Dist. 2007) (finding an absence of fraud where the sellers of the property denied knowledge of mold and the evidence reflected that mold was discovered in discrete and inaccessible areas). Plaintiff cannot conceal something it did not have knowledge of. Plaintiff's Motion is **GRANTED** as to Counterclaims Five and Seven.

### 3. Tortious Interference

In the eighth counterclaim, Defendants claim that Plaintiff interfered with potential customer relationships when it wrongfully removed Defendants' access to its reservation system. Plaintiff argues that because the Franchise Agreement expressly permitted it to terminate access to the reservation system upon an event of default, Defendants cannot prove that Plaintiff had the required intent to disrupt Defendants' relationships with potential customers.

In Ohio, "[t]he elements of tortious interference with a business relationship are: (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Martin v. Jones*, 41 N.E.3d 123, 141 (Ohio Ct. App. 4th Dist. 2015). As discussed earlier, Plaintiff was not entitled to cease access to the reservation system before giving Defendants a chance to cure the defaults. It follows that there was approximately 30 days where Plaintiff may have

13

wrongfully interfered with Defendants' customers attempting to make reservations at the Subject Property. Plaintiff's Motion is **DENIED** as to Counterclaim Eight.

### 4.  Civil Conspiracy

In the ninth counterclaim, Defendants claim that Plaintiff and non-party FMW worked together in malicious combination to conceal and/or fail to disclose the flooding and mold damage of the Subject Property at the time of the Transfer Agreement, Franchise Agreement, and Guarantee. Plaintiff argues that this claim fails because no underlying tort has been committed.

To state a claim for civil conspiracy under Ohio law, the plaintiff must allege (1) a malicious combination; (2) of two or more persons; (3) resulting injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Rosy Blue, NV v. Lane*, 767 F. Supp. 2d 860, 868 (S.D. Ohio 2011) (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 534 (6th Cir. 2000)).

First, the Court has already found that there is no evidence that Plaintiff had previous knowledge of mold or flooding on the Subject Property or that it made misrepresentations regarding such conditions. Second, because the Court has dismissed the fraudulent misrepresentation and concealment counterclaims, there is no underlying unlawful act independent from the conspiracy identified. Plaintiff's Motion is **GRANTED** as to Counterclaim Nine.

### 5.  Violation of Ohio Rev. Code. 1334.03

In the tenth counterclaim, Defendants contend that Plaintiff violated Ohio Rev. Code. 1334.03, when it "falsely and deceptively stated to Defendants that the Subject Property had not been damaged by flooding or mold." (Answer and Counterclaims, ¶ 134). Again, Plaintiff argues that there is no evidence in the record to support that Plaintiff made any representations with

respect to the condition of the property.

Sections 1334.03(B) and (C) provide, "[i]n connection with the sale or lease of a business opportunity plan, no seller or broker shall . . . [m]ake any false or misleading statement or engage in any deceptive or unconscionable act or practice; [or] [m]ake any representation that is inconsistent with the disclosures required by section 1334.02 of the Revised Code and division (A) of this section[.]"[2]

This claim fails for the reasons already stated. Plaintiff's Motion is **GRANTED** as to Counterclaim Ten.

> **B.** Plaintiff's Claims
>
> **1.** Federal Trademark Infringement

In Count One of the Complaint, Plaintiff claims that Riverside is liable for federal trademark infringement because it used the Red Roof System without Plaintiff's consent and in doing so created a likelihood of consumer confusion in the marketplace. Defendants respond that there is a genuine issue of material fact as to whether Riverside continued to enjoy Plaintiff's consent after August 31, 2017, based on Plaintiff's prior breach and an act of Force Majeure.

Under 15 U.S.C. § 1114 (the "Lanham Act"), a defendant is liable for federal trademark infringement where the "use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). "In order to defeat summary judgment in a Lanham Act case alleging violations of sections 32 and 43, defendants must raise a

---

[2] Section (A) of Ohio Rev. Code 1334.03 prohibits sellers or brokers from making "any, oral, written, or visual representation to a prospective purchaser concerning potential sales, income, or gross or net profit[.]" Section 1334.02 provides that "in connection with the sale or lease of a business opportunity plan, no seller or broker shall fail to provide the prospective purchaser . . . a written disclosure document."

15

genuine issue of fact as to (1) whether their use of the trademark was without the registered owner's consent, or (2) whether their unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the product." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1188–89 (6th Cir. 1997). While the Court usually cycles through an eight-factor test to determine whether a "likelihood of confusion" exists, that is unnecessary where the allegation of infringement involves a hold-over franchise. *Id.* at 1190. Instead, the Court looks at whether there is "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated" to establish a "likelihood of confusion." *Id.*

Here, the Franchise Agreement explicitly states that Riverside was to remove all Red Roof Inn signs within one day following termination of the Franchise Agreement, or if not feasible, within ten days with the signs covered in the interim. (§ 14.1.2). Plaintiff notified Riverside of its termination of the Franchise Agreement on August 31, 2017. (ECF No. 1-4). Within the letter, Plaintiff specifically referenced the operative section of the Franchise Agreement as to the expeditious removal of all Red Roof Inn marks. There is no dispute that Riverside continued to use the Red Roof Inn logo and signs until January 2018. (Kluchin Depo., 64, 115).

Mr. Kluchin's belief that the "[Franchise Agreement] was not terminated correctly" does nothing to negate that Riverside used the Red Roof Inn logo and signs for a period of approximately five months without Plaintiff's consent. (*Id.* at 64). There is no genuine dispute that Defendants failed to make the necessary property improvements required by the Franchise Agreement and that such default was never cured. (Kluchin Aff., ¶¶ 11–12). And as the Court previously explained, the Force Majeure exception is inapplicable. Even if the jury determines at

16

trial that Plaintiff breached the Franchise Agreement by cutting off access to the reservation system before the cure period expired, such breach would not excuse Defendants from their failure to make improvements to the property while still allowing them the benefits of operating as a Red Roof Inn. Defendants cite no legal support for this argument, nor is it reasonable. Thus, there is no genuine issue of material fact that Plaintiff did not consent to Riverside's use of its trademark and Riverside's unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the inn.

Plaintiff's Motion is **GRANTED** as to Count One.

### 2. Breach of Contract

Plaintiff argues that it is entitled to judgment on Counts Two and Three of the Complaint because Defendants have failed to pay Plaintiff fees and liquidated damages due under the Franchise Agreement. Defendants respond that Plaintiff has provided no evidence that Defendants failed to pay the amounts due.

There is no dispute that Plaintiff and Riverside entered into a Franchise Agreement that entitled Riverside to the use of the Red Roof System and Plaintiff's proprietary marks at the Subject Property in exchange for agreeing to certain obligations outlined in the Agreement. (§ 1.1) One of those obligations required Plaintiff to make certain payments to Plaintiff for royalties, marketing and reservations, a Preferred Members Program, and other fees (*Id.* § 4). Another required Riverside to pay Plaintiff liquidated damages in the amount of $100,000 if the Franchise Agreement was terminated earlier than its 20-year term. (*Id.* § 13.1).

According to the termination letter and final account status report, Plaintiff notified Defendants on August 31, 2017 that they owed an accounts receivable balance for fees due under Section 4 of the Franchise Agreement in the amount of $20,690.40 and liquidated damages for

17

early termination of the Franchise Agreement in the amount of $100,000.00. (ECF No. 1-4). However, Plaintiff fails to identify any part of the record that supports that thereafter, Riverside did not pay either amount. Plaintiff cannot rest on its unverified Complaint to substantiate its breach of contract claims. Plaintiff's Motion is **DENIED** as to Counts Two and Three.

### 3. Action on Guarantee

In Count Six, Plaintiff seeks to hold Mr. Shyam liable for monies owed by Riverside as a result of the signed Guarantee. Defendants respond only that "[t]he performance obligations of [the] Guarantee are conditioned upon a breach of the Franchise Agreement." (Defs. Memo. Opp., 13).

A guarantor is one who promises to be responsible for the debt, duty, or performance owed by another person or entity. *SDI/Columbus Equities, L.P. v. Scranton*, 1993 WL 271003, at *2 (Ohio Ct. App. 10th Dist. 1993). "The contract of a guarantor is his own separate contract." *Id.* The label "guarantor" is usually used to describe one who becomes secondarily liable for another's debt in contrast to a strict "surety" who is primarily liable with the principal debtor. *Id.* However, regardless of the verbiage used, a guarantor's liability is governed by the terms of the contract and is interpreted as such under Ohio law. *O'Brien v. Ravenswood Apts., Ltd.*, 862 N.E.2d 549, 555 (Ohio Ct. App. 1st Dist. 2006); *see also Stone v. Nat'l City Bank*, 665 N.E.2d 746, 750 (Ohio Ct. App. 8th Dist. 1995) ("[T]he principles of contract construction are no different in the interpretation of guarantee agreements.").

In order to induce Plaintiff to enter the Franchise Agreement with Riverside, Mr. Shyam signed a Guarantee, Indemnification and Acknowledgment acknowledging that he "jointly and severally" and "unconditionally" agreed to guarantee "the due, complete and punctual performance and observance of all of [Riverside's] financial obligations under the Franchise

Agreement including, without limitation, the due and timely performance of all payment obligations." (Ex. C, ECF No. 1-2). Defendants offer no evidence to the contrary. Therefore, Mr. Shyam will be jointly and severally liable for any financial obligations that are determined to be owed by Riverside to Plaintiff. However, Plaintiff cannot seek to collect from Mr. Shyam until it proves Defendants failed to pay a financial debt owed under the Franchise Agreement.

Plaintiff's Motion is **DENIED** as to Count Six.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 32). Judgment is granted in favor of Plaintiff on its Federal Trademark Infringement Claim (Count One) and on Counterclaims Two through Seven, Nine, and Ten. The Court will schedule a trial on the remaining claims and damages.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE